# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RODNEY T. YOUNG,

       Plaintiff,

  v.

C. TAYLOR,

       Defendant.

Case No. 1:18-cv-490

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

### I.    Factual and Procedural Background

On July 24, 2018, Plaintiff, an incarcerated individual who proceeds *pro se*, filed a complaint against Defendant C. Taylor, a Correctional Officer at the Southern Ohio Correctional Facility ("SOCF").  Pursuant to local practice, this case has been referred to the undersigned magistrate judge.

Plaintiff's complaint alleges that on February 20, 2018, Defendant Taylor violated Plaintiff's Eighth Amendment rights by "deploying chemical agent OC spray into the facial area of the Plaintiff, without justification."  (Doc. 4 at 5).  By way of background, Plaintiff alleges that the prison had been placed on lock-down because another correctional officer had been stabbed earlier that day.  (*Id.*)  As a result of the lockdown, C/O Taylor and a second correctional officer (non-party C/O Corns) were escorting the nurse through the cell block during pill call.  As the three walked down the cell block, Plaintiff heard the correctional officers yell "Get the fuck out of your bars," which "was directed toward another inmate."  Plaintiff's complaint continues:

> As I approached my bars to see what was all of the com[m]otion, C/O Taylor
> started shaking the can of OC spray which all Correction Officers are
> recommended to do during Medication Pass.  At that time, C/O Taylor

deployed a large amount of O.C. spray in the facial area of the Plaintiff. There was no justification of such act. I began cursing C.O. Taylor out due to the injustice by the way that prisoners are treated in this institution. I was force[d] to remain in my cell for at least 10 to 15 minutes before I was escorted to Segregation where I did not receive any medical treatment that requires all inmates who are sprayed with OC spray to be [decontaminated]. I was never given that opportunity. Moreover, I was again forced to suffer through the pain of a burning sensation that lasted for 4 days. This has caused me to have serious eye problems that I am continuing to seek medical attention for that.

(Doc. 4 at 5-6). Plaintiff's complaint alleges that on the same date, Defendant wrote a conduct report that charged Plaintiff with four rule violations relating to an accusation that Plaintiff had rushed to the front of his cell "with an unknown liquid in a bottle attempting to throw it." (*Id*. at 6). Plaintiff states that he was found not guilty of three of the four rule violations and found guilty of just one violation for "disrespect." Plaintiff appealed, but his Rules Infraction Board ("RIB") conviction was affirmed. (*Id*.)

On August 23, 2018, Defendant Taylor filed both an answer and a motion to dismiss. Plaintiff filed a response in opposition to Defendant's motion, to which Defendant has filed a reply. On September 10, 2018, Plaintiff filed a motion seeking "to convert" Defendant's motion to dismiss into a motion for summary judgment, asserting that Defendant has improperly "included documents to their motion outside the pleadings." (Doc. 11). In addition, on October 3, 2018, Plaintiff filed an "amended complaint" without leave of this Court, which the Defendant has moved to strike. (Docs. 14, 18). In addition to filing a response in opposition to Defendant's motion to strike, Plaintiff has filed a belated motion seeking leave to file an amended complaint. (Docs. 19, 20).

For the reasons that follow, the undersigned recommends that Plaintiff's motion to convert Defendant's motion to dismiss to a motion for summary judgment be denied and

that Defendant's motion to dismiss be granted.  This Report and Recommendation further recommends that Plaintiff's amended complaint be construed as if it had been only tendered (rather than filed) and properly accompanied by Plaintiff's later-filed motion seeking leave to amend.  As so construed, Plaintiff's motion seeking leave to amend should be denied.  Consistent with the construction of Plaintiff's amended complaint, Defendant's motion to strike the procedurally improper pleading is construed as a response in opposition to amendment.  Because this R&R recommends that no amendment be permitted but that the record of the construed tendered amendment be preserved, Defendant's motion to strike should be denied as moot.

## II.    Plaintiff's Motion to Convert Defendant's Motion to Summary Judgment

The undersigned first addresses Plaintiff's motion to convert Defendant's motion to dismiss into a motion for summary judgment, on the basis that the Defendant has improperly sought consideration of "documents [attached] to [his] motion outside the pleadings." (Doc. 11).   Although Plaintiff is correct in his belief that consideration of a motion to dismiss is limited to the pleadings, he is incorrect in his belief that the Defendant attached evidentiary exhibits to his motion to dismiss.  No exhibits have been attached to that motion.  Because the Defendant has not attached extraneous evidence to his motion, the undersigned recommends the denial of Plaintiff's motion.

At the same time, the undersigned recognizes that – while not attaching exhibits to his motion to dismiss - Defendant has attached copies of relevant administrative grievances to his answer to the complaint. (*See* Doc. 8).  Plaintiff references the exact same grievances in his original complaint and appends copies to an "amended

complaint," (*see* Doc. 14), which pleading the undersigned has construed as if tendered with a motion seeking leave to amend.  There is no dispute that the grievances attached to Defendant's Answer and to Plaintiff's "amended complaint" are accurate copies of the grievances that Plaintiff filed concerning the incident at issue in this case.  For the reasons explained below, those grievances may be considered without converting Defendant's motion to one for summary judgment.

### III.    Defendant's Motion to Dismiss

#### A.  Standard of Review

Unlike a motion for summary judgment, a motion to dismiss is directed to the sufficiency of the pleadings.   As suggested by Plaintiff, exhibits attached to a motion to dismiss or for judgment on the pleadings generally will be excluded under Rule 12 and cannot be considered without converting the motion to one for summary judgment.  *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).  Accordingly, "we construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir.2007).

Still, while review of a motion to dismiss rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).  The exhibits attached to Defendant's answer also *may* be considered part of the pleadings without converting the motion to one under

4

Rule 56 if the documents are referred to in plaintiff's complaint and are central to the claims. *Weiner v. Klais and Company,* 108 F.3d 86, 89 (6th Cir.1997); *see also Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F.Supp.2d 914, 924 (N.D.Ohio 2009); *accord Fientall v. Lange*, 2011 WL 4526742 at *3 (W.D. Mich. Aug. 8, 2011) (holding that court may take judicial notice of grievance filings because they constituted public records under state law and were not subject to reasonable dispute, collecting cases); *but contrast Robison v. Coey*, 2016 WL 4721209 (Sept. 9, 2016) (R&R declining to consider separate form relating grievance history in support of motion based on failure to exhaust under PLRA). In light of the cited case law, and the fact that the *same* exhibits are attached by Plaintiff to a procedurally improper "amended complaint," the undersigned finds it appropriate to take judicial notice of those exhibits when considering Defendant's motion to dismiss. The same exhibits are properly considered to determine whether Plaintiff should be granted leave to amend. (*See* Doc. 14).

Returning to the standard of review in evaluating Defendant's motion to dismiss Plaintiff's complaint, the court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 508 F.3d at 336. The Sixth Circuit has explained the pleading requirements that are necessary as follows:

> In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 1964–65 (internal citations omitted). In *Erickson v. Pardus*, …127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the

defendant fair notice of what the...claim is and the grounds upon which it rests.' " *Id.* at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly*, 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549–50 (6th Cir.2008) (quoting

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d at 295–96 (6th Cir.2008) (footnote

omitted); *see also generally, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant Taylor is entitled to dismissal of Plaintiff's complaint under this standard.

## B. Eleventh Amendment Immunity Bars Any Official Capacity Claims

For the reasons expressed in his motion, Defendant is entitled to judgment as a matter of law on any claims that Plaintiff asserts against him in his official capacity. Such claims are barred by the Eleventh Amendment. In fact, Plaintiff does not object to the dismissal of his official capacity claims.[1] (Doc. 15 at 5, "Plaintiff agrees that the suit is against each defendant in their individual, rather than official capacities"). *See also, generally, Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299 (6th Cir. 1984).

## C. Judgment Should be Granted on Eighth Amendment Claims

### 1. The Components of an Eighth Amendment Claim

An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The

---

[1]In his tendered "amended complaint," Plaintiff has eliminated all "official capacity" claims.

subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*; *see also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995 (1992). In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The Eighth Amendment does not prohibit a de minimis use of force "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 501 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327) (internal quotations omitted).

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), and *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81. "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident.'" *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* At the same time, courts have repeatedly explained that "not… every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Pelfrey v. Chambers*, 43 F.3d 1034, 1039 (6th Cir. 1995) (internal quotation marks

and citation omitted).

### 2. No Allegations Support Either Subjective or Objective Elements of Plaintiff's Eighth Amendment Claims

Plaintiff's complaint first alleges that Defendant Taylor sprayed him with OC spray "without justification." However, Plaintiff also alleges that he was charged with four separate rule violations and found guilty of Disrespect. Plaintiff alleges that the Conduct Report charged him with "rush[ing] to the cell front with an unknown liquid in a bottle attempting to throw it [], C/O Corns grabbed nurse Rayburn [shielding] her when I [Taylor] deployed OC spray….'" (Doc. 4) Despite Plaintiff alleging that he was found not guilty of three charges, he does not claim in his original complaint that those charges were in any way falsified.[2] Thus, construing the allegations of the original complaint in the light most favorable to Plaintiff, Plaintiff alleges that Taylor deployed OC spray to control a celled inmate who was charged with more serious offenses, but found guilty only of only one Rule violation: Disrespect.

To state an Eighth Amendment claim, Plaintiff must at a minimum allege that Defendant did not have a good faith basis for employing OC spray, and that the harm he suffered was objectively "serious." The allegations also must at least reasonably suggest a malicious or sadistic subjective intent. Here, however, Plaintiff's allegations suggest no more than a de minimis use of force (OC spray) deployed to restore order, which force appears insufficient to establish either the objective or subjective elements of Plaintiff's

---

[2]In his memorandum in opposition to the motion to dismiss, Plaintiff suggests for the first time that his complaint alleges that the Defendant "fabricated a story that plaintiff had a liquid substance he planned to throw on the nurse." (Doc. 15 at 2). However, the original complaint contains no such allegations. The argument that the conduct report contained fabricated charges is presented for the first time in opposition to Defendant's motion to dismiss, and reiterated in a cursory fashion only in the tendered amended complaint.

claim. Plaintiff complains that a single guard sprayed him with pepper spray in reaction to multiple perceived rule violations, including an alleged threat to throw "an unknown liquid in a bottle…." on either an officer or the nurse. The use of OC spray in the face of such a perceived threat would not violate the Eighth Amendment, even if the officer's perception was mistaken and the inmate was later found not guilty. In other words, the fact that Plaintiff was convicted only of a single "Disrespect" violation does not transform the Defendant's use of OC spray into an Eighth Amendment violation. Multiple cases hold that OC spray may be deployed in order to maintain order and restore discipline, including for rule violations, and even when an inmate remains in his cell.

In his memorandum in opposition to the motion to dismiss, Plaintiff argues for the first time that Taylor's use of OC spray was "in retaliation" for an earlier incident that day in a different part of the prison, involving a violent assault on another correctional officer by two unidentified inmates. (Doc. 15 at 2). Plaintiff does not suggest any particular connection between Defendant Taylor and the injured officer, nor does Plaintiff suggest any connection between himself and the unidentified inmate assailants. Rather, Plaintiff argues that "[b]ecause tempers were high due to this [earlier] assault, guards were retaliating and harassing SOCF prisoners who had nothing to do with that assault." (*Id.*; *see also* Doc. 15 at 4, "Tempers of the guards had flared and they were retaliating against random prisoners"). Plaintiff explains that he filed suit to "break this pattern and practice of allowing guards to torment AND torture prisoners for the action for a couple prisoners who attacked a guard." (Doc. 15 at 3, emphasis original).

Thus, in his opposition to dismissal Plaintiff implies the existence of a wide-spread conspiracy among all correctional officers at SOCF, including but not limited to Defendant

Taylor. However, no such allegations appear in Plaintiff's original complaint. In any event, it is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus,* 409 Fed Appx. 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir. 1987)) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity"). Here, construing the complaint liberally, Plaintiff's allegations are insufficient to suggest that Defendant Taylor (or others) planned to deprive him of a constitutionally-protected right. Even if he had included similar "retaliation" allegations in his original complaint, such conclusory allegations lack the specificity required to state a cognizable claim under 42 U.S.C. § 1983. To the extent that Plaintiff attempts to newly allege some form of a "retaliation" claim other than conspiracy, that claim also would be subject to dismissal. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state a claim under § 1983.' " *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Twombly*, 550 U.S. at 555-57.

In his opposition to dismissal, Plaintiff asks this Court to infer a malevolent or malicious subjective intent because Defendant Taylor "fabricated a reason why [he] sprayed mace on plaintiff, for no legitimate penological reason." (Doc. 15 at 4).[3] Despite failing to include *any* such allegations in his *original* complaint, Plaintiff now contends that

---

[3]Although only a single Defendant, C/O Taylor, is identified in his original complaint, Plaintiff's memorandum in opposition repeatedly refers to multiple "defendants."

the RIB finding of "not guilty" on three of the four charged offenses in Taylor's Conduct Report means that the charges "were proven to be false charges." (Doc. 15 at 4). But the complaint's allegation that Plaintiff was found "not guilty" on some charges is not equivalent to an allegation that the charging officer "fabricated" all charges. An officer may have an objectively reasonable basis for filing a Conduct Report listing multiple charges, and no malicious or sadistic intent, even if the inmate is later exonerated.

The facts alleged by Plaintiff here confirm the propriety of dismissal and undermine Plaintiff's argument that his allegations should be construed as stating Defendant Taylor's malicious and sadistic intent to cause Plaintiff harm. Rather than supporting that inference, Plaintiff's own allegations suggest a factual basis for Taylor's charges and refute any inference of malevolence. Plaintiff's original complaint alleges that he heard the two correctional officers yell "Get the fuck out of your bars" as they were nearing Plaintiff's cell, but that Plaintiff believed they were speaking to "another inmate" and moved to the front of his cell to see what was going on. He further alleges that Taylor held a canister of OC spray while he accompanied the nurse as a precautionary measure, as "recommended" by prison policy. (Doc. 4 at 5). Attached to Plaintiff's construed-as-tendered "amended complaint" is a document identified as Plaintiff's "Testimony …at Rules Infraction Board." There, Plaintiff testified that he was not holding a canister of liquid as charged, but that the evidence instead showed that "[m]y arm is out the door because I was about to throw a letter down to my neighbor." (Doc. 14 at 8). In other words, Plaintiff testified in the prison disciplinary proceeding that he had his arm outside of his cell and was about to throw an object (a letter) to a neighboring cell as the officers

approached.[4]  The facts as alleged confirm, therefore, that Defendant deployed his OC spray in a good faith attempt to counteract a perceived threat (even if that perception was mistaken), and/or in order to restore order based upon Plaintiff's rule violation(s).

Plaintiff protests dismissal based upon his assertion that the use of OC spray against an inmate "because he was verbally disrespectful… has been held unconstitutional in numerous courts." (*Id.*)   However, no controlling case within the Sixth Circuit supports Plaintiff's position on the facts as alleged, including the cases cited by Plaintiff.  *See, e.g., Davis v. Agosto*, 89 Fed. Appx. 523, 526 (6th Cir. 2004) (collecting cases and holding use of mace against inmate who failed to place hands next to the tray slot as directed while in his cell was a "good-faith effort to maintain or restore discipline). As recognized in *Davis*, courts have repeatedly upheld the use of pepper spray or mace on confined prisoners when used to avert a threat or to force a recalcitrant inmate to comply with an order.  Thus, "a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order."  *Easley v. Little*, Case No. 1:14-cv-891, 2016 WL 4006676 at *7 (S.D. Ohio June 28, 2016).

In short, current Eighth Amendment standards permit the use of pepper spray in order to force an inmate to comply with an order, to counteract a perceived threat, or to restore discipline.  Even though cases are more frequently decided on summary judgment, Defendant Taylor is entitled to dismissal at the outset of this case because no controlling cases prohibit the use of OC spray under the circumstances that Plaintiff

---

[4]The allegations in Plaintiff's original complaint further suggest that after hearing the officers direct another nearby inmate to retreat from the front of his cell, Plaintiff ignored the warning to his neighbor and moved to the front of his cell.

alleges. *See, e.g., Brown v. Perez*, 2017 WL 3378994 (6th Cir. April 17, 2017) (affirming *sua sponte* dismissal of *pro se* prisoner complaint on initial screening under PLRA, 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(ii); officers' alleged use of tear gas and physical restraints did not constitute violation of Eighth Amendment where allegations indicated that force was to maintain or restore discipline rather than maliciously and sadistically to cause harm); *see generally, e.g., McDougald v. Dillow*, Case No. 1:16-cv-1099 (S.D. Ohio Aug. 2, 2018) (summary judgment granted to defendants for short use of pepper spray); *McDougald v. Erdos*, Case No. 1:17-cv-95, 2018 WL 3772181 (S.D. Ohio Aug. 9, 2018) (same); *Thompson v. Esham*, Case No. 1:15-cv-553, 2018 WL 398439 (S.D. Ohio Jan. 12, 2018) (summary judgment granted despite use of multiple short bursts of pepper spray); *Payne v. Gifford*, Case No. 1:16-cv-514, 2017 WL 4329631 (S.D. Ohio Sept. 5, 2017) (holding that one-second use of pepper spray demonstrated neither subjective nor objective components of Eighth Amendment claim); *Phillips v. Sammons*, Case No. 1:16-cv-1034 at *11 (S.D. Ohio Jan. 11, 2018) (granting summary judgment where officer deployed chemical spray for less than two seconds).

As the undersigned explained in a similar pepper spray case:

> To be clear, when pepper spray or some other chemical agent is used against a prisoner, that use of force might support the objective component of an Eighth Amendment claim when combined with other force (i.e., a "violent extraction"), or if the spray was used for an excessive length of time, employed in some obviously malicious manner, or under circumstances that demonstrate a more objectively significant incident. *See e.g., Freeman v. Collins*, 2009 WL 414325 (S.D.OH Feb. 17, 2009) (denying qualified immunity to officer who sprayed inmate with mace based on disputed issues; inmate had medical documentation prohibiting use of chemical agents, and allegedly was denied medical treatment after the incident). However…, where it is clear that some manner of threat by Plaintiff occasioned the briefest reactive use of pepper spray by a single prison guard, with no other force used by that guard or by anyone else, the

13

undersigned concludes that the force used was akin to a "push or shove" that causes "no discernible injury" and that falls short of what is required to state a valid Eighth Amendment claim.

*Thompson v. Joseph*, Case No. 1:12-cv-992, 2014 WL 1685918 (S.D. Ohio, April 29, 2014), R&R adopted at 2014 WL 2172894 (discussing OC spray cases and granting summary judgment in light of evidence that use of force was *de minimis* because it was in response to the inmate's verbal threat and/or attempt to spit); *accord Easley v. Little*, 2016 WL 4006676 at *7 (citing *Jennings v. Mitchell*, 93 Fed. Appx. 723, 724 (6th Cir. 2004) and similar pepper spray cases and holding that "a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a direct order").

Plaintiff does cite one case in which the undersigned recommended the partial denial of a motion for summary judgment based upon an allegedly excessive use of OC spray. *See Smith v. Bigham*, Case No. 1:17-cv-128, 2018 WL 2100518, at *6 (S.D. Ohio May 7, 2018). However, that case is distinguishable. In *Smith*, the plaintiff had alleged that a correctional officer first had deployed OC spray against another inmate. The plaintiff, housed nearby, had complained of burning eyes and difficulty breathing and requested that a fan be turned on or window opened to minimize the secondary exposure. The plaintiff then retreated to the back of his cell. In response, the defendant deliberately entered an area behind the plaintiff's cell and allegedly sprayed OC spray directly into the vent of plaintiff's cell, into plaintiff's eye. The plaintiff alleged that the defendant then failed to document his sadistic use of OC spray. Unlike in this case, in *Smith* the plaintiff was not charged with *any* rule violations. The Court partially denied summary judgment because the defendant failed to carry his burden of production to show the lack of use of

14

OC spray against the plaintiff, and there was no evidence that refuted the reasonable inference of a sadistic intent. "[E]ven if the injury that resulted was *de minimis*, the use of OC spray was for no reason other than in retaliation for Plaintiff's complaints, and therefore was purely malicious and sadistic." *Smith*, 2018 WL 2100518, at *6. By contrast in this case, no reasonable inference of either the objective or subjective components of an Eighth Amendment claim arises from Plaintiff's allegations.

Although Plaintiff alleges that he was not removed from his cell for 10-15 minutes, and that he was not offered a decontamination shower after being transferred to segregation, none of those allegations relate to Officer Taylor, who is alleged only to have deployed the OC spray. Likewise, Plaintiff's allegation that he suffered eye discomfort for four days before being offered medical attention fails to state any claim against Defendant Taylor, because Plaintiff does not allege that Taylor refused Plaintiff medical care or was in any way involved beyond the initial deployment of OC spray.

### 3. Defendant is Entitled to Qualified Immunity

Defendant's motion to dismiss also persuasively argues that he is entitled to qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged

15

constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

Plaintiff does not suggest that the Defendant was acting outside his authority as a correctional officer. For the reasons discussed, Plaintiff's allegations fall short of supporting an Eighth Amendment claim under clearly established law. *Accord Smith v. Bigham*, 2018 WL 2100518, at *8 (holding that correctional officer was entitled to qualified immunity based upon lack of any injury from secondary exposure to pepper spray). Moreover, because Defendant Taylor is not alleged to have personally refused Plaintiff a shower, or to have had anything to do with any delay in medical treatment, he is entitled to qualified immunity on any claim relating to the allegations that Plaintiff was denied a decontamination shower or delayed medical treatment. *Id.* (granting qualified immunity because plaintiff did not allege that he sought medical treatment from the named defendant, and because the lingering effects of OC spray did not suggest a sufficiently "serious" condition for which any lay person would have recognized the need for medical attention); *see also generally*, *Ratcliff v. Moore*, 614 F. Supp.2d 880 (S.D. Ohio 2009).

### IV. Defendant's Motion to Strike Amended Complaint

On October 3, 2018, Plaintiff filed what was docketed as an "Amended Complaint." (Doc. 14). Defendant has moved to strike this pleading under Rule 12(f), Fed. R. Civ. P., because Plaintiff inappropriately filed it without leave of Court, in violation of Federal Rule 15(a)(2). On procedural grounds, Defendant is correct. After 21 days after service of Defendant's answer, Plaintiff lost any right he had to simply file an amended complaint without leave of opposing counsel or this Court. Defendant filed his answer and motion to dismiss on August 23, 2018. Plaintiff's attempt to amend is untimely because it was

not filed until more than 21 days after Defendant served his responsive pleading. Thus, strictly on procedural grounds, Defendant's motion could be granted.

Nevertheless, the undersigned has construed and reviewed Plaintiff's "amended complaint" as if properly *tendered* with a motion to amend, rather than simply filed. Plaintiff proceeds *pro se*, and Rule 15(a) directs courts to "freely" grant amendment of pleadings "when justice so requires." The interests of justice favor at least a preliminary review of Plaintiff's amended complaint on the record presented. Indeed, Plaintiff acknowledges his procedural error in a response in opposition to Defendant's motion to strike and has filed a belated motion seeking leave to amend. (Docs. 19, 20).

Recognizing the liberality with which *pro se* filings are typically viewed, Defendant Taylor alternatively asks this Court to strike the amended complaint "because it is redundant and immaterial" because the "substance …is substantially the same" as the original complaint. Put another way, Defendant Taylor suggests that the arguments presented in the motion to dismiss are equally valid against Plaintiff's "redundant" "amended" pleading. And, while the "amended" complaint purports to add a new claim against a second Defendant (Correctional Officer Corns), Defendant argues that Plaintiff's proposed new claims against Officer Corns lack factual substance and allege only in the most conclusory manner that Defendant Taylor and Officer Corns engaged in some form of conspiracy. Thus, Defendant strongly implies that any amendment would be futile even if the amended complaint had been properly tendered rather than filed, and accompanied by a motion seeking leave to amend. Upon close review of Plaintiff's "amended" pleading, the undersigned agrees.

Consistent with Plaintiff's argument opposing dismissal, the construed-as-

tendered amended complaint generally alleges that "tempers had flared" at SOCF due to the assault against another guard earlier that same day in a different area of the prison. Plaintiff alleges that "[f]or no legitimate reason defendant Corns and Taylor had conspired together to spray plaintiff with chemical mace, then fabricate a story in an attempt to justify their actions, subjecting plaintiff to cruel and unusual punishment as he was given no medical treatment or allowed to wash the mace off his face and body." (Doc. 14 at 1). Plaintiff asserts that the use of "mace" was, "upon information and belief, done in retaliation for the guard having been assaulted previously." (Doc. 14 at 2).

Plaintiff further alleges that "[w]ithout provocation…, defendant Corns grabbed the nurse and placed her behind him as defendant Taylor stepped forward and sprayed [Plaintiff] in the face with …chemical mace." (*Id.* at 2). The amended complaint accuses Corns and Taylor of "conspir[ing] to fabricate a false scenario…, stating that they saw the plaintiff rushing to the cell front with an unknown liquid in a bottle to use to throw on the nurse. They also lied and said that the plaintiff was being disrespectful to the nurse by making lewd remarks about or to her." (*Id.* at 3). Plaintiff states he was charged "with numerous infractions defendant Taylor had fabricated in order to justify his use of excessive and unnecessary force." (*Id.*) He alleges that the RIB's "not guilty" verdict reflects video or other evidence that confirmed that Plaintiff had been standing at the front of his cell with his hands on the bars talking to his neighbor, and not holding a bottle of any unknown substance. Plaintiff alleges that because the video lacked sound, "as a way to pacify the guard, the [RIB] found plaintiff guilty of disrespect…." (*Id.*) Plaintiff appealed "but was denied relief." (*Id.* at 4). In a conclusory fashion, he alleges that both Corns and Taylor "either actively participated in the unnecessary and excessive use of

chemical mace on him, then denied him medical treatment, and/or aqui[e]sed in the unconstitutional activity by failing to prevent it and involving theirselves [sic] in the cover up…."   In addition to monetary relief, Plaintiff seeks the issuance of preliminary and permanent injunctive relief "prohibiting defendants and their agents from using unnecessary chemical mace on prisoners confined to their cells when they are not attempting or harming themselves, others or property."  (Doc. 14 at 4).

Plaintiff has attached as exhibits to his amended complaint a number of documents relating to the RIB proceedings.  One such exhibit is Defendant Taylor's Conduct report, in which Taylor states:

> I C/O Taylor along with C/O Corns was escorting Nurse Rayburn in L6 for evening med. pass.  Be advised L-6 has been problematic all day with threats and [illegible], also two Inmates were escorted out earlier in the shift. This prompted us to have both myself and C/O Corns to escort the nurse. I/M Young…kept making remarks at the nurse "Baby bring that sweet ass over here" and was ordered multiple times to stop as we approached his cell I/M Young rushed to the cell front with an unknown liquid in a bottle attempting to throw it.  C/O Corns grabbed nurse rayburn [shielding] her where I deployed OC spray and giving multiple directives for I/M Young to drop the bottle with the unknown liquid in it.

(Doc. 14 at 6).  Another exhibit is Plaintiff's own statement to the Rules Infraction Board, in which he denies holding a bottle with liquid in it:

> I didn't do any of this.  My arm is out the door because I was about to throw a letter down to my neighbor.  I had my hands up in the bars in clear view. They locked two of my neighbors up earlier.  I was laughing.  We were laughing at the inmate too.

(*Id.* at 8).

It is worth noting that in the administrative grievance proceedings reflected in the exhibits attached to the amended complaint, Plaintiff barely references to Officer Corns, and accuses only Defendant Taylor of assaulting him with OC spray.  (See Doc. 14 at 15,

informal complaint resolution ("ICR")).  Plaintiff also has attached the disposition of the Notification of Grievance ("NOG"), in which Linnea Mahlman states that she has reviewed the RIB findings, DVR video footage, Plaintiff's statement, as well as a medical report "completed by medical on 02 20 2018" which found no injury.  According to Mahlman's denial of the NOG, the medical report reflects that Plaintiff was "removed from initial OC exposure area…and offered decontamination shower per security.  Inmate advised to report any changes to staff and follow up with medical as needed."  (Doc. 14 at 14).  In his final appeal of Mahlman's denial of his NOG to the Chief Inspector, Plaintiff asserts for the first time that he was not seen by medical staff but instead was "thrown in a cell with the OC spray drying up on my skin!"  However, nowhere in his amended complaint or in the attached exhibits does Plaintiff allege that: (1) he requested medical attention from Officers Taylor or Corns at any time; or (2) that he suffered any actual injury.

For all of the reasons discussed above, the construed-as-tendered "amended complaint" still would fail to state any claim against Taylor or Corns.  Therefore, even considering Plaintiff's belated motion seeking leave to amend, the undersigned would recommend denial of further amendment based upon the arguments advocated by Defendant Taylor in his motion to dismiss the original complaint.  Plaintiff's attempt to add new claims against Correctional Officer Corns fails for the same reasons.  Additionally, the tendered new allegations against Officer Corns are even fewer and more conclusory than those alleged against Officer Taylor.                                    `

## V.    Conclusion and Recommendations

For the reasons discussed, **IT IS RECOMMENDED THAT:**

1.  Plaintiff's motion to amend/correct or "convert" Defendant's motion to dismiss

to a motion for summary judgment (Doc. 11) should be **DENIED**;

2. Defendant's motion to dismiss Plaintiff's original complaint (Doc. 7) should be **GRANTED**;

3. In the interests of justice, Plaintiff's procedurally improper amended complaint (Doc. 14) and belated motion seeking leave to amend (Doc. 20) should be **DENIED**;

4. Consistent with preceding paragraph, Defendant's motion to strike has been construed as a response in opposition to the construed-as-tendered amendment. Because this R&R recommends that no amendment be permitted but that the record of the tendered amendment be preserved, Defendant's motion to strike should be **DENIED AS MOOT**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RODNEY T. YOUNG,                                    Case No. 1:18-cv-490

       Plaintiff,                                    Barrett, J.
                                                    Bowman, M.J.
   v.

C. TAYLOR,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).